### BOWERS v. CALKINS et al.
#### Civ. A. No. 768.

United States District Court
D. New Hampshire.
May 4, 1949.

Dudley W. Orr and Robert H. Reno, Concord, N.H., for plaintiff.

William L. Phinney, Attorney-General for The State of New Hampshire, for defendants.

Before WOODBURY, Circuit Judge, CONNOR and CLIFFORD, District Judges.

WOODBURY, Circuit Judge.

In a complaint filed in the District Court of the United States for the District of New Hampshire the plaintiff charged the defendants, "as and constituting 'New Hampshire Racing Commission', an administrative agency of the State of New Hampshire", with depriving him of some of the rights, privileges and immunities secured to him by the Constitution and laws of the United States.

It is alleged in the complaint that the plaintiff is a citizen of the State of Maryland, that the defendants are all citizens of the State of New Hampshire, and that the amount in controversy exclusive of interest and costs exceeds the sum of three thousand dollars. In addition it is alleged that the cause of action set out in the complaint is one arising under the Fourteenth Amendment of the Constitution of the United States and also one arising under section 1 of the so called Civil Rights Act of April 20, 1871, 17 Stat. 13, as amended R.S. § 1979, 8 U.S.C.A. § 43.

Following these jurisdictional allegations the complaint goes on to set out that the plaintiff has earned his livelihood for many years by caring for and training race horses, first as a groom and stable foreman and during the past five years as a licensed trainer, and that in the latter capacity he has trained horses for racing extensively in Massachusetts, Rhode Island and Florida, holding trainer's licenses in those states which have never been suspended or revoked. Then it is alleged that on or about August 16, 1948, the plaintiff was issued a trainer's license in New Hampshire by the defendant Commission, as a condition precedent to the issuance of which he was required to sign a waiver in the following terms:

"I hereby assent and agree that the barns and the living rooms used by me may be searched for the possession of drugs and any accessories pertaining thereto, at all times without a search warrant, either in my presence or absence, by the Racing Commission or the officials of any track acting under its jurisdiction; and I hereby waive any and all rights which I now or may hereafter have to object to any such search, and waive all claims arising out of any such search against the New Hampshire Racing Commission or the members thereof and the Racing Association on whose premises the search is made, and the officials of any track making such search."

The complaint then continues with the allegation that:

"On or about October 9, 1948, the plaintiff was advised by the stewards of Rockingham Park, a race track in The State of New Hampshire operated by The New Hampshire Jockey Club, Inc., a corporation, under the jurisdiction and supervision of defendant New Hampshire Racing Commission, that his license as a trainer

was suspended because a certain bay gelding named Aldridge, trained by the plaintiff, was alleged to have been stimulated by a drug when he won the eighth race at said Rockingham Park on September 27, 1948." [1]

It is next alleged that on October 11, 1948, the plaintiff requested a hearing before the defendant Commission with respect to his suspension by the Stewards of Rockingham Park, that his request was granted, and that a hearing was held by the Commission at Rockingham Park on October 23, 1948. By amendment allowed by this court the complaint then continues with the allegation that at no time prior to or during the hearing by the Commission was the plaintiff notified of the nature of the charges laid against him or of the rules of the Commission which he was alleged to have violated, and that, although he was not aware of the charges made against him or of the rules he was said to have violated, he was nevertheless "required to introduce evidence to show that the decision and ruling of the Stewards of Rockingham Park, by which his license was suspended, was erroneous before any evidence was introduced to support said decision and ruling of the Stewards of Rockingham Park."

The original complaint then goes on to allege that certain evidence received by the Commission at the hearing was obtained by agents of the Commission, or agents of the management of Rockingham Park, or agents of the Stewards of the Park, "by unreasonable and illegal searches of the plaintiff's premises and by unreasonable and illegal seizure of certain articles belonging to the plaintiff". And then, by another amendment, it is alleged that at the hearing before the Commission no evidence was introduced to show either that the plaintiff had at any time failed properly to protect the horse, Aldridge, against the administration or attempted administration of any drug, or that the plaintiff had at any time had in his possession within the confines of Rockingham Park "any drugs, hypodermic syringes, hypodermic needles or similar instruments" or that he had at any time had in his possession "any medicines containing any drugs either for external or internal use for either horse or man."

Following this, turning back once more to the original complaint, it is alleged:

"On November 9, 1948, the defendant New Hampshire Racing Commission notified the plaintiff that on the basis of evidence presented at the hearing held on October 23, 1948, the Commission had ruled:

"(a) That the plaintiff had violated Rules 520-a, 523, 524 and 599 of the New

---

[1] At the pre-trial conference held in this case it was agreed that the rulings of the Stewards of Rockingham Park on the occasion of the plaintiff's suspension were as follows:

"New Hampshire Jockey Club, Inc.
Fall Meeting          October 9, 1948.
Ruling:
Upon receipt of the report from the chemist of the New Hampshire State Racing Commission that the sample of urine taken from the horse, Aldridge, winner of the eighth race on Sept. 27., contained a substance of the nature of Benzedrine, Trainer C. Bowers, and all horses owned or trained by him, are suspended for the remainder of the meeting and his case is referred to the New Hampshire State Racing Commission for further action.
By Order of the Stewards
Signed   Leo   O'Donnell
  "        A. F. Shehan
  "        Jas. E. Farley

"New Hampshire Jockey Club, Inc.
Fall Meeting          October 9, 1948.

Ruling:
Upon receipt of the report from the chemist of the New Hampshire State Racing Commission that the sample of urine taken from the horse, Aldridge, winner of the eighth race on Sept. 27th., contained a substance of the nature of Benzedrine, it is hereby ruled that he was ineligible to receive the purse. The redistribution of the purse as follows:

1st. Money:   Anvelt
2nd. Money:   Pompagle
3rd. Money:   Biddy Barton
4th. Money:   Risking All
          By Order of the Stewards
          Signed  Leo  O'Donnell
            "       A. F. Shehan
            "       Jas. E. Farley."

Hampshire Rules of Racing, promulgated and adopted by the defendant New Hampshire Racing Commission;

"(b) That the suspension of his license and all horses owned or trained by him by the Stewards of Rockingham Park was sustained;

"(c) That all horses owned by the plaintiff's wife and trained by him be suspended for the remainder of the year 1948;

"(d) That the ruling of the Stewards of Rockingham Park that the horse Aldridge, winner of the eighth race at Rockingham Park on September 27, 1948, was ineligible to receive the purse and that the purse for said race be redistributed was sustained."

Then the complaint continues as follows:

"The action of the defendant New Hampshire Racing Commission has resulted in the plaintiff's being unjustly and illegally deprived of his constitutional right to pursue his chosen vocation and to earn a livelihood as a trainer of racing horses in The State of New Hampshire and at other race tracks throughout the United States, inasmuch as working agreements among the racing commissions of The State of New Hampshire and the various other states in which racing is conducted, all of which commissions are associated together as the National Association of Racing Commissions, with an executive office in Lexington, Kentucky, prevent the plaintiff in fact from obtaining a license as a trainer of horses in any state as long as said unjust and illegal suspension of the plaintiff's license by the defendant New Hampshire Racing Commission is not vacated and withdrawn and removed from the plaintiff's record as a trainer in The State of New Hampshire."

Next the plaintiff characterizes the actions and rulings of the defendant Commission in the premises as "arbitrary, capricious, unsupported by evidence and unlawful", and then he avers that the state statute authorizing horse racing for public exhibition and establishing a State Racing Commission (Revised Laws of New Hampshire, 1942, ch. 171) is unconstitutional and void in that it violates the Fourteenth Amendment of the Constitution of the United States and the Act of April 20, 1871, supra, and is being enforced against him by the defendants as Commissioners "in an unconstitutional and discriminatory manner", and that the defendants as state officials acting under color of the above state statute "have deprived the plaintiff of certain rights, privileges and immunities secured to him by the laws and the Constitution of the United States of America." The plaintiff then says that the defendants' actions have caused him irreparable harm and injury and that if the court does not enjoin them "from their unconstitutional act in enforcing the suspension of the plaintiff's license as a trainer of racing horses and does not require the defendants to vacate, cancel and withdraw said order suspending the plaintiff's license, the plaintiff will be without a remedy to protect his constitutional property and personal right to pursue his chosen vocation and to earn a livelihood, as damages will be only partially compensatory and do not and will not insure to the plaintiff his constitutional right to engage in his vocation."

Wherefore the plaintiff prays for "a preliminary and final injunction enjoining the defendants and their agents, employees and attorneys, and all persons in active concert or participation with them, from enforcing said order made and promulgated by the defendant New Hampshire Racing Commission, on November 6 (sic), 1948, suspending the plaintiff's license as a trainer of racing horses, and to require the defendants to vacate, cancel and withdraw their said order dated November 6 (sic), 1948, suspending the plaintiff's license as a trainer of racing horses and to remove said suspension from the plaintiff's record as a trainer of horses in The State of New Hampshire."

The plaintiff concludes his complaint with prayers for such other and further relief as justice and equity require and for costs and disbursements.

Upon the filing of this complaint in the District Court of the United States for the District of New Hampshire on March 9, 1949, a district court of three judges was duly constituted in accordance with 28 U.S.C.A. § 2284; March 28, 1949 was set

as the date for hearing the plaintiff's prayer for a preliminary injunction and the Governor and Attorney General of the State of New Hampshire were notified as sub-section 2 of the above section of the Code requires, and on March 23, 1949, a pre-trial conference with counsel in the case was held by Judge Connor. At this conference the rulings of the Stewards of Rockingham Park already noted were stipulated, and in addition it was agreed that the case might be heard on its merits on the date previously set for the hearing on the plaintiff's prayer for a preliminary injunction and that a final order might be issued thereafter, and that the transcript of the testimony adduced at the hearing held at Rockingham Park by the Commission on October 23, 1948, might "be used in lieu of any testimony contained therein."

On March 26, 1949, the Attorney General of New Hampshire, appearing for the defendant Commissioners, filed a motion to dismiss for lack of jurisdiction over the subject matter, first on the ground that the amount in controversy was less than three thousand dollars and the complaint failed to indicate that any of the plaintiff's constitutional rights had been impaired, and second on the ground that the questions raised had become moot because it appeared from the complaint that the plaintiff's suspension as a trainer did not extend beyond the end of the calendar year 1948, the year in which his license as such had been granted.

But at the same time that the Attorney General filed his motion to dismiss, he also filed an answer in which after stating as a first defense that the complaint failed to state a claim against the defendants upon which relief could be granted, he, as a second defense, denied the material allegations of fact in the complaint and in the course of doing so, averred that the order of the Commission of November 9, 1948, sustaining the action taken by the Stewards in the premises, in addition to the parts thereof paraphrased in the complaint, contained the provision:

"That the trainer's license issued to Carroll Bowers for the year 1948, and all horses owned by Mrs. Bowers and trained by Carroll Bowers; namely, Aldridge, Try-out, Unheard and Poker Face, be suspended for the remainder of the year 1948 as punishment on each offense. It is further recommended that subsequent commissions shall not entertain any application for renewal of license before May 20, 1949."

At the hearing held by this court on March 28, argument on the motion to dismiss for lack of jurisdiction was heard first. As a result of this argument the motion was denied without prejudice and counsel then proceeded to introduce such evidence as they saw fit and to argue thereon. Counsel were then allotted such time as they wished to file briefs and this court took the case under advisement.

It is suggested that federal jurisdiction in this case may be rested upon any one or more of three grounds. It is argued that, regardless of the nature of the legal questions presented, it may rest upon the ground that the parties are citizens of different states and the matter in controversy between them exceeds the sum or value of $3,000, exclusive of interest and costs. 28 U.S.C.A. § 1332(a) (1). Or, regardless of the citizenship of the parties, it may rest upon the ground that the amount in controversy, exclusive of interest and costs, exceeds $3,000 and the action is one arising under the Constitution, or laws of the United States. 28 U.S.C.A. § 1331. Or, regardless of the citizenship of the parties and the amount in controversy, it may rest upon the ground that it is a civil action to redress the deprivation, under color of a state statute, ordinance, or regulation, of a right, privilege or immunity secured by the Constitution of the United States, or by an act of Congress providing for the equal rights of citizens. 28 U.S.C.A. § 1343(3).

As we read the cases there exists grave doubt whether federal jurisdiction may be rested in the case at bar on the ground last stated. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873. But we see no occasion to attempt to resolve this doubt (nor do we see occasion to decide whether jurisdiction exists under the first ground suggested) for it is abundantly clear, first, that the plaintiff is a citizen of one state

and the defendants are all citizens of another, and, second, that this is an action arising under the Constitution or laws of the United States, and this we think gives federal jurisdiction under the second ground enumerated above because we believe that for jurisdictional purposes there is a sufficient showing that the amount in controversy exclusive of interest and costs exceeds $3,000.

In the first place it is categorically alleged in the complaint that the value of the matter in controversy exceeds the jurisdictional amount, and although this allegation has been denied, no attempt has been made to support the denial by affidavit. In the second place we cannot say that the allegation is colorable for the purpose of conferring jurisdiction, or that in view of other allegations in the complaint the plaintiff could not have suffered damages in the amount alleged. Indeed other allegations in the complaint inferentially tend to show that after March 9, 1949, the date his complaint was filed, the plaintiff would suffer substantial monetary loss as a result of his suspension in New Hampshire. For although the plaintiff's actual suspension in New Hampshire lasted only until the end of 1948, it is alleged that by reason of working agreements between the local racing commission and similar commissions in other states the suspension of a trainer's license in one state operates to prevent the person suspended from obtaining a similar license in any other state in which racing is conducted not only for the duration of his suspension, but until that suspension should be "vacated and withdrawn and removed" from a licensee's record as a trainer. While it stretches our credulity to believe that a temporary suspension in New Hampshire would as a practical matter operate as a permanent suspension for life in every other state in the nation in which racing is conducted, as is literally alleged, it, coupled with the recommenda-

tion contained in the last sentence of the defendant commissioners' ruling set out in their answer "that subsequent commissions shall not entertain any application for renewal of license before May 20, 1949", can reasonably be interpreted as showing that the plaintiff's suspension in New Hampshire until the end of the calendar year 1948 would in practical effect operate to prevent the plaintiff from obtaining a license anywhere not only for the balance of the year 1948 but also until May 20, 1949. For although the last sentence of the defendant commissioners' ruling purports in terms to be only a recommendation to subsequent commissions in New Hampshire, we nevertheless think it reasonable that commissions in other states as well might follow that recommendation and refuse to issue a trainer's license to the plaintiff until May 20, this year.

■ And further allegations in the complaint are enough to show that the plaintiff's suspension generally until this latter date caused him substantial damage this spring for we take notice of the fact that the racing season has already begun in Rhode Island and Massachusetts, in fact it has been on for weeks in Rhode Island, states in which the plaintiff alleges he has held trainer's licenses in previous years and where it is reasonable to suppose he would have held licenses again this year had he been qualified to apply. Since a trainer's income producing period is naturally during the racing season, we think these latter allegations reasonably construed do not negative but on the contrary lend support to the general allegation of damages in excess of the statutory minimum for federal jurisdiction.

■ Therefore we construe the complaint not only as alleging an amount in controversy adequate to give federal jurisdiction,[2] but also as alleging that the defendants' unconstitutional and illegal ac-

---

[2] If it is the rule in equity (unlike at law where the allegations of the complaint made in good faith are controlling) that a "traverse of the allegation as to the amount in controversy, or a motion to dismiss based upon the absence of such amount, calls for substantial proof on the part of the plaintiff of facts jus-

tifying the conclusion that the suit involves the necessary sum", see opinion of Roberts, J. in Hague v. C.I.O., 307 U.S. 496, 507, 508, 59 S.Ct. 954, 960, 83 L.Ed. 1423, then, on the evidence introduced at the trial, we find as a fact that the damages which the plaintiff will sustain from March 9, to May 20, 1949,

tions have operated to prevent the plaintiff from obtaining a license in any state from the date of the Commission's ruling last November until the twentieth of May this year, and hence as alleging a cause of action which has not yet become moot.

■ It may be that in construing the complaint as liberally as we have we are not giving sufficient heed to the rule of strict construction summarized in Phillips v. United States, 312 U.S. 246, 250, 251, 61 S.Ct. 480, 483, 85 L.Ed. .800, in which, omitting citations, the Supreme Court said in part:

"It is a matter of history that this procedural device [three-judge district courts as provided for in 28 U.S.C.A. § 2284, formerly § 266 of the Judicial Code, 28 U.S. C.A. § 380] was a means of protecting the increasing body of state legislation regulating economic enterprise from invalidation by a conventional suit in equity. While Congress thus sought to assure more weight and greater deliberation by not leaving the fate of such litigation to a single judge, it was no less mindful that the requirement of three judges, of whom one must be a justice of this Court or a circuit judge, entails a serious drain upon the federal judicial system. * * * Moreover, inasmuch as this procedure also brings direct review of a district court to this Court, any loose construction of the requirements of § 266 would defeat the purposes of Congress, as expressed by the Jurisdictional Act of February 13, 1925, to keep within narrow confines our appellate docket. The history of § 266, the narrowness of its original scope, the piece-meal explicit amendments which were made to it, the close construction given the section in obedience to Congressional policy, combine to reveal § 266 not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." See also Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606, 610.

However, in fairness to the plaintiff we think we should construe the complaint as we have, and from this it follows that there is federal jurisdiction. Our jurisdiction as a three-judge district court is obvious. 28 U.S.C.A. § 2281.[3]

But, notwithstanding our jurisdiction as a federal court to hear and dispose of this case, the plaintiff is not entitled to the relief for which he asks unless he has established a cause of action in equity, Douglas v. City of Jeannette, 319 U.S. 157, 162, 63 S.Ct. 877, 87 L.Ed. 1324, and this we think he has failed to do.

■ Application under the equity jurisdiction of a court for the extraordinary remedy of an injunction always constitutes an appeal to the sound discretion of the court, and in the exercise of discretion courts of equity traditionally have not limited their consideration to the interests of the parties alone but have had regard for the interest of the public as well. And "Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies." Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971. From these principles there has grown up over the years a rule applicable generally to a variety of situations to the effect that when a federal court sitting in equity is asked to interfere with the enforcement of a state statute or the ruling of a state administrative agency, as well as with numerous other state functions, it will do so only to prevent irreparable injury which is clear, imminent, and substantial. And

as a result of the loss of his license as a trainer are enough for federal jurisdiction.

3 Injunction against enforcement of State statute; three-judge court required

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

this is a strict test for the "cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. See Cavanaugh v. Looney, 248 U.S. 453, 457, 39 S.Ct. 142, 143, 63 L.Ed. 354; Di Giovanni v. Camden [Fire] Ins. Assn, 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers. Compare 37 Stat. 1013, 28 U.S.C.A. § 380; Judicial Code, § 24(1), as amended, 28 U.S.C. § 41(1), 28 U.S.C.A. § 41(1); 47 Stat. 70, 29 U.S.C. §§ 101-115, 29 U.S.C.A. §§ 101–115." Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. 501, 61 S.Ct. 645. For other statements of the general principle, its limitations, and applications of it to specific situations, see Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873, and the cases which are cited therein.

Applying the strict test laid down in the foregoing cases we do not find that the plaintiff's injury from now on is either clear enough or substantial enough to warrant an exercise of our jurisdiction in his behalf. For we do not find on the evidence introduced at the hearing that it is more probable than otherwise that the plaintiff's disability will continue, either in New Hampshire or elsewhere after May 20, 1949. On the contrary, the evidence produced indicates to our satisfaction that it is more probable than not that after the above date the plaintiff will be free, as far as his suspension in New Hampshire is concerned, to obtain a trainer's license in New Hampshire, or in any other state where racing is conducted, and we so find. Thus, there now remains less than a month more for him to wait until he will be free to resume his occupation without our intervention. And this situation is not due to delays on our part. We expedited the hearing of this case as much as we could in fairness to the defendants, we gave counsel for both sides the time they requested and agreed upon for filing their briefs, and we have prepared our opinion as promptly as full consideration of the questions presented allowed. The situation arises because the plaintiff waited until March 9, 1949, to file his complaint.

Under the circumstances present in this case, although we have found that from March 9, the date as of which the question of jurisdiction must be decided, to May 20, this year, the plaintiff's damages exceed the amount necessary for jurisdiction, we find that from the present, the time as of which the question of the plaintiff's right to an injunction is to be decided, until May 20, his loss will be far less, in fact, that it will be too slight to warrant the relief for which he asks when to give it would interfere not only with the "smooth working of the federal judiciary" but also with the "harmonious relation between state and federal authority." Railroad Commission of Texas v. Pullman Co., supra. In short the prospective injury proved is not enough to move us in the exercise of our discretion to issue an injunction the only effect of which will be to permit the plaintiff to resume his occupation about three weeks earlier than he will be able to resume it anyway.

Since we consider that as a federal court sitting in equity we ought not to grant the relief requested, that is, since we find no equity in the cause, a final judgment will be entered dismissing the plaintiff's complaint. Douglas v. City of Jeannette, 319 U.S. 157, 166, 63 S.Ct. 877, 87 L.Ed. 1324; Burford v. Sun Oil Co., 319 U.S. 315, 334, 63 S.Ct. 1098, 87 L.Ed. 1424.