## PETROLEUM EXPLORATION, INC. *v.* PUBLIC SERVICE COMMISSION ET AL.

No. 705. Argued April 4, 5, 1938.—Decided May 2, 1938.

*Mr. W. J. Brennan,* with whom *Messrs. Edward C. O'Rear, Allen Prewitt,* and *Charles N. Kimball* were on the brief, for appellant.

*Mr. J. W. Jones,* Assistant Attorney General of Kentucky, for appellees.

MR. JUSTICE REED delivered the opinion of the Court.

This is an appeal from a final decree dismissing appellant's bill of complaint for want of jurisdiction in equity. It was entered by the United States District Court for the Eastern District of Kentucky sitting with three judges under Judicial Code, § 266. 21 F. Supp. 254. The appellant sought to enjoin the Public Service Commission of

Kentucky from prosecuting an investigation of wholesale rates for gas marketed by contract in Kentucky by appellant, on the ground that any regulation of the rates charged by appellant to its customers would be beyond the statutory power of the Commission, since the appellant was not a public utility, and would result in a deprivation of property without due process, a denial of equal protection of the laws, and a violation of the contracts clause of the Federal and State Constitutions, affecting contracts entered into prior to the passage of the regulatory act [1] of the General Assembly of Kentucky. As grounds for equitable relief, it was alleged that there was no adequate remedy and that irreparable injury would be inflicted upon appellant by the large expense entailed in preparation for the investigation.

Appellant is a corporation solely of the State of Maine, engaged in the production and purchase of natural gas at various fields in Kentucky and the transmission of that gas through wholly intrastate pipe lines to distributing agencies at the "city gates" of various municipalities of that Commonwealth. Appellant sells to three distributing agencies: a partnership, a corporation entirely free of connection with appellant, and a corporation in which appellant owns a dominant interest. It offers to sell and sells its commodity by separate contracts only to the distributing agencies named in the bill. All of these agencies, with one immaterial exception, are the owners of unexpired franchises purchased from the respective municipalities which they serve. Either by these franchises or by supplementary contract, the rates are fixed for retail sales of gas. Acting pursuant to statutory provisions authorizing investigations of the rates of defined utilities, the Public Service Commission of Kentucky issued on May 29, 1937, an order, pertinent provisions of which

---

[1] Acts of 1934, c. 145, as amended by Acts of 1936, c. 92.

are set forth in the margin,[2] reciting that appellant is an operating utility subject to the Commission's jurisdiction, setting a date for a public hearing, and ordering appellant

[2] "Notice of Investigation and Order to Show Cause.

"Whereas, An examination of the reports of several wholesale and retail gas utilities serving in this state, show that they purchase gas at wholesale rates from the Petroleum Exploration, Inc., Lexington, Kentucky; and

"Whereas, The Commission has found under Sections 3952–1–12–13, and 14 that the Petroleum Exploration, Inc., is an operating utility in the State of Kentucky, and subject to the jurisdiction of this Commission; and

"Whereas, It is apparent from a comparison of these rates with those of other companies rendering a similar class of service in Kentucky that these rates may be excessive; and—

"Whereas, These wholesale rates bear a definite relationship to the cost of gas to consumers in the following towns and communities, namely, Corbin, Somerset, Barbourville, Manchester, Burning Springs, Richmond, Irvine-Ravenna, London, Winchester, Mt. Sterling, Cynthiana, Georgetown, Lexington, Paris, Frankfort, Versailles, Midway, and North Middletown; and

"Whereas, Authority to initiate this investigation is vested in the Commission by Sections 3952–12–13, and 14 of the Kentucky Statutes,

"Now, Therefore, Notice is Hereby Given, That the Commission has entered upon an investigation of the above matters and that a public hearing will be held relative to said matters at the office of the Commission on June 29, 1937, at which time and place any person interested may appear and present such evidence as may be proper in the premises; and

"Whereas, Under such circumstances the Commission finds the burden of proof upon the utility to show that rates and charges are fair and reasonable, and not arbitrary,

"Now, Therefore, it is Ordered:

"1. That official representatives of the Petroleum Exploration, Inc., appear at such hearing and present evidence, if any it can, as will show conclusively the fairness and reasonableness of its present rates and charges for gas which it is selling to companies that are in turn selling the same gas at wholesale or retail in this state, or submit

to appear at such hearing and present evidence of the reasonableness of its rates and charges, and also to make its records available for examination.

Appellant filed a plea to the Commission's jurisdiction, in substance setting up the objections subsequently urged in the bill under consideration. The Commission overruled this plea and reset the investigation for hearing on the merits. The appellant filed an application for a rehearing of this order. Though the Commission has not formally passed upon this application it admits that it intended and threatened to proceed with the investigation, determine and fix a fair rate for appellant's gas, and that it would have so proceeded but for the temporary restraining order obtained by appellant upon the filing of the bill in question.

Appellant's bill alleged that it was the obvious purpose of the Commission to lower appellant's rates, that these rates were not subject to the regulatory jurisdiction of the Commission, that any reduction would violate the Fourteenth Amendment, and impair the obligations of its contracts, in contravention of the contracts clauses of the State and Federal Constitutions. It was further alleged that the investigation, and the orders entered therein, are unlawful and unreasonable, and, if further prosecuted,

---

for the approval of the Commission such changes and revisions as will make such rates or charges fair and reasonable."

[Sections 2 and 3 omitted here relate to a requirement for the submission of information on contracts between appellant and other parties. Existence of such contracts was denied by appellant, and no evidence to establish them was offered.]

"4. That all books, accounts, records, correspondence and memoranda of the Petroleum Exploration, Inc., be made available for examination by the Commission's representatives.

"Notice is Hereby Given to the Petroleum Exploration, Inc., of the above order of the Commission.

"Dated at Frankfort, Kentucky, this 29th day of May, 1937."

would put appellant to considerable unlawful and needless expense. The Commission filed an answer asserting that appellant was subject to its regulatory jurisdiction. It denied any purpose on its part to attempt to lower the contract price which appellant charged the distributing agencies but averred that it would institute and conduct a special investigation and proceeding to determine a fair and reasonable price or rate to be charged by appellant and to fix said price or rate.

The majority opinion of the District Court held that as the order challenged could be enforced only by judicial proceedings, there existed no immediately threatened irreparable injury or damage to the appellant within the equity jurisdiction of the District Court. Without any consideration of the merits, the bill was dismissed. The assignments of error attack this conclusion. We affirm the decree of the District Court.

*First.* The point is made by appellees that injunction is prohibited by the Johnson Act of May 14, 1934, c. 283, § 1, 48 Stat. 775, 28 U. S. C. § 41 (1). This act withdraws from the district courts jurisdiction of any suit to enjoin the enforcement of any order of a state administrative commission where such order "(1) affects rates chargeable by a public utility, (2) does not interfere with interstate commerce, and (3) has been made after reasonable notice and hearing, and where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." The Johnson Act does not apply here because the order complained of, i. e., that of May 29, 1937, was entered without notice or hearing. Though it is entitled a "Notice of Investigation and Order to Show Cause," which would be an appropriate method of initiating an investigation, in fact the order commands appellant to produce certain evidence on a designated date, and not merely to show cause on that date why evi-

dence should not be produced. The order of June 29, 1937, overruling the plea to the jurisdiction, is not final but is pending on an application for rehearing.

*Second.* This proceeding was begun under the provisions of § 24 (1) of the Judicial Code, 28 U. S. C. § 41 (1). Jurisdiction was challenged by the Commission on the ground that the value of the matter in controversy was not in excess of $3,000. To show the requisite amount, appellant alleged that it would be necessary to expend $25,000 to present the evidence required by the order. It was found by the District Court from the testimony at the trial that "the expense to plaintiff of complying with said orders would be more than $3,000.00 in employing appraisers, geologists, engineers, accountants, etc., to show the original and historical cost of its properties, cost of reproduction as a going concern, and other elements of value recognized by the law of the land for rate making purposes."

The purpose of this proceeding is to stop the investigation of the rates under the order issued. Since the necessary expense of producing the information demanded by the order exceeds the jurisdictional amount, the value of the matter in controversy is at least this sum. This purpose or object is analogous to those sought in injunctions to restrain a continuing trespass, where the value of the matter in controversy includes the cost of remedying the condition as part of the value of the matter in controversy, namely, the prevention of interference with plaintiff's rights.[3] Other examples are found in a suit to enjoin the enforcement of a tax statute, where the

---

[3] *Glenwood Light Co.* v. *Mutual Light Co.,* 239 U. S. 121, 125. The pleadings and proof in the present case do not in terms raise the question of the value of the right to conduct business free of interference by the Commission. *Scott* v. *Donald,* 165 U. S. 107; cf. *Glenwood Light Co.* v. *Mutual Light Co., supra,* 124.

amount of the tax is the value of the matter in controversy,[4] and in a suit to enjoin enforcement of an order to install and maintain a track, where the value of the matter in controversy is the cost of compliance.[5] Where "expenses incident to compliance" with a regulatory statute exceed $3,000, the jurisdiction is clear.[6] There is no contention here either that the Commission's order left appellant with any less expensive alternative, or that the worth of appellant's entire business is less than $3,000. In undertaking to enjoin this investigation, the cost incident to making a showing required by the Commission is not collateral or incidental to the purpose of the injunction, but a threatened expense from which relief is sought. Whether such irrecoverable cost is an irreparable injury against which equity will protect is considered later in this opinion. The District Court had jurisdiction of the cause, as a federal court.

*Third.* We next consider whether the suit must be dismissed pursuant to § 267 of the Judicial Code, 28 U. S. C. § 384, which declares that no suit in equity shall be sustained "where a plain, adequate, and complete remedy may be had at law." Though this contention was not raised below by the Commission, "either the trial court or the appellate may, of its own motion, take the objection."[7] For determination of the adequacy of this rem

[4] *Healy* v. *Ratta*, 292 U. S. 263.

[5] *Western & Atlantic R. Co.* v. *Railroad Commission*, 261 U. S. 264.

[6] *Packard* v. *Banton*, 264 U. S. 140, 142, 143.

[7] See *Twist* v. *Prairie Oil & Gas Co.*, 274 U. S. 684, 690. Although the objection does not go to the jurisdiction of the court as a federal court and may be waived and not considered if not timely raised (*Reynes* v. *Dumont*, 130 U. S. 354, 395), if it be obvious that there is an adequate remedy at law, the court acts *sua sponte* to preserve the courts of equity as a forum for extraordinary relief, in accordance with the legislative direction of § 267 of the Judicial Code. *Parker* v. *Winnipiseogee Lake Cotton & Woolen Co.*, 2 Black 545, 550; *Wright* v. *Ellison*, 1 Wall. 16, 22; *Oelrichs* v. *Spain*, 15

edy we must here assume the allegations of appellant that, unless an injunction is granted, irreparable injury will flow from its compliance with the order of May 29.

It is settled that no adequate remedy at law exists, so as to deprive federal courts of equity jurisdiction, unless it is available in the federal courts.[8]  If appellant ignores the Commission's order, action for recovery of penalties for the violation of the order may be instituted by the Commonwealth of Kentucky. Ky. Stat. Ann. (Carroll's 8th ed., Baldwin's 1936 revision) §§ 3952-13 and -61. But this proceeding could neither be begun nor removed to the federal court.  Apart from the difficulty of maintaining such an action in the federal courts, in view of its penal nature, the State would be proceeding as plaintiff to enforce its laws; its complaint would not be grounded on the Constitution or laws of the United States, and there would not be diversity of citizenship, the States not being "citizens" within the Judicial Code.[9]  There is equitable jurisdiction to enjoin the proposed investigation of appellant's rates, if the order of May 29, quoted above, carries a threat of imminent, irreparable injury.

*Fourth.* The bill asks injunctive relief to restrain the Commission from further prosecuting the "investigation" into the price of gas sold under appellants contracts to the distributing agencies.  Two decisions dealing with

Wall. 211, 228; *Singer Sewing Machine Co.* v. *Benedict,* 229 U. S. 481, 486; *Henrietta Mills* v. *Rutherford County,* 281 U. S. 121, 123, 128.  Cf. *Federal Trade Commission* v. *Claire Furnace Co.,* 274 U. S. 160.  It is a question of "whether the case is one for the peculiar type of relief" granted by courts of equity.  *Di Giovanni* v. *Camden Ins. Assn.,* 296 U. S. 64, 69.

[8] *Di Giovanni* v. *Camden Ins. Assn.,* 296 U. S. 64, 69, and cases cited; *Chicago, B. & Q. R. Co.* v. *Osborne,* 265 U. S. 14, 16.

[9] *Postal Tel. Cable Co.* v. *Alabama,* 155 U. S. 482, 487; *Minnesota* v. *Northern Securities Co.,* 194 U. S. 48, 63; *Arkansas* v. *Kansas & Texas Coal Co.,* 183 U. S. 185, 188; *City Bank Co.* v. *Schnader,* 291 U. S. 24, 29.

218

orders for furnishing information have recently been handed down by this Court.[10] In both cases this Court dealt with the merits of the respective orders, determining that there was no constitutional basis for saying that "any person is immune from giving information appropriate to a legislative or judicial inquiry." Here there is no need to consider the validity of the challenged order. To justify the use of the extraordinary power of a court of equity something more must be involved than an application of a statute in an unconstitutional manner against complainant. There must be an allegation and proof of threatened injury under some of the recognized sources of equitable jurisdiction.[11] The one most frequently relied upon in constitutional cases, and pleaded here, is irreparable injury.[12] To furnish the information required by the order will cost $25,000, arising from the necessity of preparing for the hearing on rates. Is this irrecoverable expense a threatened irreparable injury which a court of equity will guard against by injunction? Whether or not equitable relief will be granted rests in the sound discretion of the court.[13]

It is true that the injury which flows from the threat of enforcement of an allegedly unconstitutional, regulatory state statute with penalties so heavy as to forbid the risk of challenge in proceedings to enforce it, has been generally recognized as irreparable and sufficient to justify an

[10] Natural Gas Co. v. Slattery, 302 U. S. 300, 306; Arkansas Louisiana Gas Co. v. Department of Public Utilities, ante, p. 61.

[11] Dows v. Chicago, 11 Wall. 108; Cruickshank v. Bidwell, 176 U. S. 73, 81; McChord v. Louisville & Nashville R. Co., 183 U. S. 483, 495; Shelton v. Platt, 139 U. S. 591, 596; Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 281.

[12] See Irreparable Injury in Constitutional Cases, 46 Yale Law Journal 255 (1936).

[13] Di Giovanni v. Camden Ins. Assn., 296 U. S. 64, 70.

injunction.[14] The Commission urges that since there is ample opportunity for the appellant to contest in a state court any effort to regulate or punish for disobedience of orders, with ultimate review by this Court, there is no irreparable injury, and that the dangers of lowered rates and threatened punishments can be overcome by opposition when an effort is made to enforce them. The case of *Federal Trade Commission* v. *Claire Furnace Co.*, 274 U. S. 160, where an effort was made to secure an injunction against enforcement of a Federal Trade Commission order to produce information, has been cited as a precedent. There were heavy penalties for violation of that order[15] but the opinion discussed the issues from the standpoint of failure to exhaust administrative remedy.[16] Appellant here insists that it is compelled to choose between compliance, at a heavy cost, or non-compliance with obvious risks of severe, though non-recurring and non-cumulative, penalties;[17] and that to stand by sub-

[14] *Ex parte Young*, 209 U. S. 123, 165; *Terrace* v. *Thompson*, 263 U. S. 197, 215, 216; *Packard* v. *Banton*, 264 U. S. 140, 143.

[15] §§ 9 and 10 of the Act of September 26, 1914, c. 311, 38 Stat. 722, 15 U. S. C. §§ 49, 50.

[16] Cf. *Dalton Adding Machine Co.* v. *State Corporation Comm'n*, 236 U. S. 699.

[17] Ky. Stat. Ann. § 3952-61 provides: "*Penalties.*—Every officer, agent or employee of any utility as enumerated in section 1 hereof, or other person who shall willfully violate any provisions of this act, or who procures, aids or abets any violation of this act by any such utility shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand ($1,000.00) dollars, or be confined in jail not more than six (6) months, or both; and if any such utility shall be a private corporation and shall violate any of the provisions of this act, or shall do any act herein prohibited, or shall fail and refuse to perform any duty imposed upon it under this act for which no penalty has been provided by law, or who shall fail, neglect or refuse to obey any lawful requirement or order made by the commission, for every such violation, failure or refusal

jects appellant to the further risk that the Commission will fix its rates on the Commission's evidence alone.[18] We may assume, without deciding, that the risk of these penalties would be sufficiently great to require the interposition of a court of equity to protect appellant against a regulatory order.

Compliance with this order, however, subjects appellant only to an expense in preparing for and carrying out an investigation. It is not suggested that the expense is disproportionate to the business of appellant, valued by the District Court as in excess of $1,500,000, and involving sales of about one billion cubic feet per annum, at a price of $350,000. No order has been entered fixing rates or regulating conduct. The necessity to expend for the investigation or to take the risk for non-compliance does

such utility shall forfeit and pay into the treasury a sum not less than twenty-five .($25.00) dollars, nor more than one thousand ($1,000.00) dollars, for each such offense, said sum or sums to be paid to the Treasurer and credited to the general fund. In construing and enforcing the provisions of this section the act, omission or failure of any officer, agent or other person acting for or employed by any utility acting within the scope of his employment shall in every case be deemed to be the act, omission or failure of such utility." There is also provision for proceedings by mandamus or injunction to compel obedience to the orders of the Commission. Ky. Stat. Ann. § 3952–13.

The minority opinion below construed this as follows: "When the violator is an individual, the penalties for failure to comply with the orders of the Public Service Commission are not more than $1,000, or confinement in jail for not more than six months, or both, and if a corporation, not less than $25 or more than $1,000 for each violation, the enforcement thereof to be by the Franklin circuit court of the commonwealth of Kentucky." 21 F. Supp. 254, at 259.

The appellant argues in this Court that failure to produce the evidence may subject it to a fine and its officers and agents to criminal penalties. Neither the majority below nor the Commission in this Court expresses a contrary view.

[18] Ky. Stat. Ann. § 3952–14.

not justify the injunction. It is not the sort of irreparable injury against which equity protects.[19]

The weight to be given complaints of irrecoverable and irreparable cost and damage in proceedings to enjoin hearings, initiated by a federal governmental agency in a matter alleged by complainants to be beyond the agency's powers, was considered in *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41. In an effort to enjoin hearings by the National Labor Relations Board, the Corporation alleged (see 303 U. S. at 47):

"that hearings would, at best, be futile; and that the holding of them would result in irreparable damage to the Corporation, not only by reason of their direct cost and the loss of time of its officials and employees, but also because the hearings would cause serious impairment of the good will and harmonious relations existing between the Corporation and its employees, and thus seriously impair the efficiency of its operations."

Further allegations pointed out similar substantial damages in preceding investigations. See Note 4 *idem*. While other grounds were factors in our conclusion to reverse the decree for an injunction, we said (p. 51):

"Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.".

It may be suggested that in the *Bethlehem Shipbuilding* case the employer had not presented to the Board its contention of constitutional immunity, and that proof of that immunity would have constituted no greater injury if presented to the Board than the courts, whereas here the appellant has already been overruled by the Commission on the question of appellant's constitutional immunity, and so would be subject to greater expense by presenting further evidence on another matter before the

---

[19] Cf. *Lawrence* v. *St. Louis-S. F. Ry. Co.*, 274 U. S. 588, 592.

Commission than by proceeding in an equity court and there contesting the Commission's jurisdiction. This was the argument presented to the Court, but not discussed, in *United States* v. *Illinois Central R. Co.*, 244 U. S. 82, 85–86. The situation is still controlled by the abiding and fundamental principle of this aspect of the *Bethlehem Shipbuilding* case, that the expense and annoyance of litigation is "part of the social burden of living under government." [20] The authority in other courts is in accord.[21]

*Fifth.* Our conclusion that this is not a threatened injury justifying intervention is strengthened by a balancing of conveniences. By the process of injunction the federal courts are asked to stop at the threshold, the effort of the Public Service Commission of Kentucky to investigate matters entrusted to its care by a statute of that Commonwealth obviously within the bounds of state authority in many of its provisions. The preservation of the autonomy of the states is fundamental in our constitutional system. The extraordinary powers of injunction should be employed to interfere with the action of the

[20] *Bradley Lumber Co.* v. *Labor Board*, 84 F. (2d) 97, 100 (C. C. A. 5).

Whether expense, in this instance, may be avoided by a challenge of the interlocutory orders of the Commission on the plea of appellant to the jurisdiction (see Ky. Stat. Ann. § 3952-44), is not within our province to decide.

[21] The suggestion that an administrative agency be enjoined from further, and expensive, proceedings after its allegedly erroneous determination of jurisdiction was considered and rejected in *Chamber of Commerce* v. *Federal Trade Commission*, 280 Fed. 45, 48–49 (C. C. A. 8); *Pittsburgh & W. Va. Ry. Co.* v. *Interstate Commerce Comm'n*, 52 App. D. C. 40; 280 Fed. 1014, 1015-6; *Paramino Lumber Co.* v. *Marshall*, 18 F. Supp. 645, 647 (D. Wash.). Compare *State ex rel. Carrau* v. *Superior Court*, 30 Wash. 700; 71 P. 648; *Edward Hines Yellow Pine Trustees* v. *Knox*, 144 Miss. 560, 572-573; 108 So. 907.

state or the depositaries of its delegated powers, only when it clearly appears that the weight of convenience is upon the side of the protestant.[22] "Only a case of manifest oppression will justify a federal court in laying such a check upon administrative officers acting *colore officii* in a conscientious endeavor to fulfill their duty to the state."[23] The Kentucky statute in question contains detailed provisions for hearings and judicial review.[24] These include notice, procedural rules before the Commission, right to counsel, production of evidence, service of orders, rehearing, process for parties and witnesses, depositions, record of proceedings, review of orders by court and appeal to the state court of last resort. The compulsory and punitive powers of the Commission are exercised through judicial process. When the only ground for interfering with the state procedure is the cost of preparing for a hearing, there is no occasion for equitable intervention.

*Affirmed.*

Mr. Justice McReynolds concurs in the result.

Mr. Justice Stone concurs, except that he expresses no opinion on the applicability of the Johnson Act.

Mr. Justice Cardozo took no part in the consideration or decision of this case.

[22] *Gilchrist* v. *Interborough Co.*, 279 U. S. 159, 207; *Pennsylvania* v. *Williams*, 294 U. S. 176, 185; *Matthews* v. *Rodgers*, 284 U. S. 521, 525; cf. *Harrisonville* v. *Dickey Clay Co.*, 289 U. S. 334, 338.

[23] *Hawks* v. *Hamill*, 288 U. S. 52, 61.

[24] Ky. Stat. Ann. §§ 3952–33 to –51 inclusive.