## PICCOLI v. BOARD OF TRUSTEES AND WARDEN OF STATE PRISON.

No. 732.

United States District Court
D. New Hampshire.

Oct. 28, 1949.

Willoughby L. Colby, Concord, N. H., for petitioner.

Gordon M. Tiffany, William S. Green, Assistant Attorneys General, for respondent.

CONNOR, District Judge.

The petitioner, Gennaro Piccoli, an inmate of the New Hampshire State Prison, complains against the Board of Trustees

and Charles B. Clarke, warden of said prison, alleging that he is denied the possession of a set of the Revised Laws of New Hampshire 1942, which he purchased and owns. He prays for an order directed to the board of trustees and said warden that he may be permitted to have and use said books. The petitioner was not present at the hearing, and without evidence the application was submitted upon statement of counsel.

Upon the same allegations, the petitioner has unsuccessfully sought relief in the state court.

In his brief, petitioner claims that his constitutional guaranty of freedom of speech and of the press has been abridged, and that in the litigation in the state courts certain procedural aspects of the case were not followed and that the courts have not given him the right to "defend" his petition.

■ I am disposed, applying the reasoning in the recent holding in Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647, to entertain the petition. Here as there, the petitioner has failed to invoke the discretionary certiorari powers of the Supreme Court, assuming that such could have been accomplished in the light of the disposition made by the state supreme court. Whatever doubt may exist as to the procedural duty of the petitioner is resolved in his favor.

The action of the board of trustees and the warden in refusing to honor the request of the petitioner is obviously predicated upon the statutory authority set forth in Chapter 464 of the Revised Laws of New Hampshire 1942. The powers of the trustees here material are defined in subsections III and IX of Section 6 of said chapter. Subsection III authorizes the trustees "To establish by-laws for the government of the prison"; subsection IX authorizes the trustees "To provide such books and other instruction as shall be deemed necessary for the convicts." In the same chapter, the duties of the warden are defined. By subsection II of Section 8, the warden is "To have the custody and superintendence of all persons confined in the prison, and of all property belonging thereto"; and subsection III charges the warden with the duty "To obey and enforce all orders, by-laws, and regulations which may be made by the trustees for the management of the prison." Thus by legislative grant the supervision and control of the prison is entrusted to the board of trustees, with specific discretionary powers in reference to "books and other instruction" to be made available.

■ It is not clear on the record what precise order was made concerning the use of the books of the petitioner or whether it originated with the trustees or with the warden, but it is abundantly plain that the trustees are by the statute charged with discretion as to such, and, barring proof of an abuse thereof, the petitioner would be without remedy. The New Hampshire Supreme Court, without opinion filed, declined to interfere with the action of the prison authorities. Such course seems similarly indicated in line with the policy of the federal courts which have been hesitant to intervene in the administration of the statutory duties of state authorities, generally sought by injunctive process under the equity jurisdiction of the court. Injunctive process, an extraordinary remedy, is an appeal to the sound discretion of the court, and so the rule has been evolved that when a federal court sitting in equity is asked to interfere with the enforcement of state statute or a rule of an administrative agency, as well as with numerous other state functions, it will do so only to prevent irreparable injury which is clear, imminent and substantial. The courts are prone to "restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." Bowers v. Calkins et al., D.C., 84 F.Supp. 272, 279. See Cavanaugh v. Looney, 248 U.S. 453, 457, 39 S.Ct. 142, 63 L.Ed. 354; Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 73, 56 S.Ct. 1, 80 L.Ed. 47.

■ Assuming the allegations to be well founded, the deprivation resultant in denying the petitioner possession of the volumes described is not such an invasion

of petitioner's constitutional rights which would justify this court in invoking the extraordinary remedy here prayed for. "The extraordinary powers of injunction should be employed to interfere with the action of the state or the depositaries of its delegated powers, only when it clearly appears that the weight of convenience is upon the side of the protestant. * * * 'Only a case of manifest oppression will justify a federal court in laying such a check upon administrative officers acting colore officii in a conscientious endeavor to fulfill their duty to the state.'" Petroleum Exploration v. Public Service Commission, 304 U.S. 209, 222, 223, 58 S.Ct. 834, 841, 82 L.Ed. 1294. Moreover, the respondent because of his status can hardly demand the conveniences and facilities which are ordinarily available. His confinement is the result of misconduct of his own choosing. He must, therefore, expect the imposition of certain limitations upon his asserted wishes, and, in the absence of proof that failure to honor such is an infraction of his inherent rights, his petition fails.

No reason appears which would warrant intervention by this court, and accordingly it is ordered that the petition be and it hereby is denied.