## FORREST HARMON & CO., Inc. v. ROTTGERING.

### Civ. No. 644.

United States District Court
W. D. Kentucky, Paducah Division.

July 26, 1952.

Brown, Eldred, Brown & Tachau, Louisville, Ky., Raymond C. Schultz, Paducah, Ky., for plaintiff.

Ed Dupree, Gen. Counsel, A. M. Edwards, Jr., Asst. Gen. Counsel, Office of Rent Stabilization, Washington, D. C., for defendant.

MARTIN, Circuit Judge.

This suit, brought by the plaintiff company, owner of 277 housing units known as Forrestdale Subdivision in McCracken County, Kentucky, adjacent to property of the Atomic Energy Commission and near Paducah, seeks to enjoin the defendant, Jack P. Rottgering, Area Rent Director, from effectuating certain rent reduction orders promulgated by him on June 25, 1952, for such time as would be necessary for the plaintiff to perfect an appeal to the Regional Housing Expediter and "for such duration of time in addition as may be ne-cessary for plaintiff to take and have heard such other administrative steps or legal remedies as may be available to it for the final determination whether such blanket rental reduction order shall become effective."

It appears that the plaintiff corporation purchased from the United States Government and moved 277 prefabricated housing accommodations from Oak Ridge, Tennessee, and re-erected them on the location above described. By contract, the plaintiff is obligated to rent these housing units to employees of F. H. McGraw and Company, the prime contractor in the construction of the atomic energy plant near Paducah.

Prior to the construction of the Forrestdale Subdivision, the plaintiff obtained approval on March 6, 1951, from the defendant Area Rent Director of a schedule of rents to be charged for the housing accommodations. In reliance upon such approval of the rents to be charged, plaintiff expended some $860,000 in the construction of a subdivision, of which amount $460,000 was borrowed from two Louisville banks which were partially induced to make the loans in consideration of the approval of the fixed rents by the Area Rent Director. On June 25, 1952, the Director ordered a rent reduction with respect to the housing units to become effective July 1, 1952.

This Court, on June 30, 1952, entered a temporary restraining order against the Area Rent Director and set the cause for hearing upon notice of an application by plaintiff for temporary injunction. The temporary restraining order was issued upon condition that an escrow account be opened with a Kentucky bank into which the plaintiff was ordered to deposit $10 per month per house, being equivalent to the reduction ordered by the Area Rent Director, and that such escrow account be kept in effect until final determination of this controversy within the administrative agency involved. The application of the plaintiff for the restraining order heretofore entered, and by agreement extended until the present motion for a preliminary injunction is acted upon by this Court, does not seek a construction by this Court of the pertinent Act, as amended, nor a review of the order

of defendant reducing the rent, nor a decision upon the merits of the controversy, nor a substitution of any court action for the administrative remedies open to the plaintiff under the applicable statutes and regulations. The plaintiff asks merely a stay of the operation of the order of the Area Rent Director, directing a blanket reduction in rent, until the plaintiff has been given an opportunity to exhaust its administrative remedies and to have a final determination by the administrative agency of the issue as to whether the rent reduction order should become effective as to its subdivision. No permanent injunction is sought.

In issuing the temporary restraining order and directing the escrow arrangement, this Court considered that, unless the excess rent under this reduction ordered by the defendant were held by an escrow trustee, transient tenants of plaintiff's housing units, of whom there could well be many, would in all likelihood leave for parts unknown and the plaintiff would suffer irreparable loss in rents should the prosecution of its appeal within the administrative agency as prescribed by law result in nullifying the rent reduction ordered by the defendant, Area Rent Director. This plan appeared to the Court, at the time of the issuance of the restraining order and now appears to be just and equitable. But the power of this Court to do justice and equity as conceived by the Court is challenged by the motion of the Area Rent Director to dismiss upon six grounds, only the first two of which seem necessary to discuss:

1. The complaint states no basis for equitable relief because plaintiff concededly has failed to exhaust its administrative remedies; and

2. The defendant is a subordinate official, subject to the orders of his superior, Tighe E. Woods, Director of Rent Stabilization, Office of Rent Stabilization, an independent agency of the United States, and the defendant cannot lawfully be sued or enjoined unless the Director of Rent Stabilization is made a party to this action.

In response to the authorities adduced by the defendant in support of the first ground of its motion to dismiss, the plaintiff points out that, in all the authorities cited, the plaintiffs had made no effort to exhaust the prescribed administrative remedies. The plaintiff shows that, in the case at bar, all that is sought is restraint of the effectiveness of an administrative agency order reducing the rents until all administrative remedies within the agency can be exhausted.

It is manifest that there does exist the differentiation pointed out by the plaintiff in the procedure in cases cited by defendant from the procedural situation encountered here. But it seems obvious from a careful consideration of the opinions of the Supreme Court that no judicial relief from threatened injury may be granted, unless and until the prescribed administrative remedies have been exhausted. Reading the language of the opinions of the highest tribunal makes this conclusion inescapable. Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50, 51, 58 S.Ct. 459, 463, 82 L.Ed. 638, seems to have been the lead-off case. There, in rejecting an "irreparable damage" argument, Mr. Justice Brandeis said: "The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. * * * Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." The doctrine of the Myers' case was applied in Macauley, Acting Ch'm, Etc. v. Waterman Steamship Corporation, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839.

In Petroleum Exploration, Inc., v. Public Service Commission, et al., 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294, the Supreme Court asserted that: "The situation is still controlled by the abiding and fundamental principle of this aspect of the Beth-

lehem Shipbuilding Case, that the expense and annoyance of litigation is 'part of the social burden of living under government.'" 304 U.S. 221, 222, 58 S.Ct. at page 841.

Were there any doubt as to the necessity of the actual exhaustion of administrative remedies by the plaintiff before a District Court may intervene in a situation of the sort presented here, such doubt would be dispelled by the opinion of the Supreme Court in Aircraft & Diesel Equipment Corporation v. Hirsch, 331 U.S. 752, 753, 67 S.Ct. 1493, 91 L.Ed 1796. There, the dismissal by the District Court of a suit arising under the Renegotiation Acts of Congress for failure of the plaintiff to exhaust administrative remedies was upheld by the Supreme Court, which considered that the requirement of exhausting administrative procedures is not satisfied by the mere initiation of them by a person, but he is required to pursue the administrative remedies to a conclusion and is not relieved of exhausting the administrative process by challenging the constitutionality of an Act of Congress creative of the administrative procedure.

The following decisions of the Circuit Courts of Appeals cited by defendant in support of his position, though not directly in point, seem relevant. Smith v. Duldner, 6 Cir., 175 F.2d 629; Gates v. Woods, Housing Expediter, 4 Cir., 169 F.2d 440; May v. Maurer, 10 Cir., 185 F.2d 475; Woods v. Durr, 3 Cir., 176 F.2d 273; Dauksewicz v. United States, 1 Cir., 194 F.2d 52; Babcock v. Koepke, 9 Cir., 175 F.2d 923; Miles Laboratories v. Federal Trade Commission, 78 U.S.App.D.C. 326, 140 F.2d 683, 685, certiorari denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582. In the light of authorities reviewed and cited, it is obvious that the first ground of the motion to dismiss is valid.

2. Moreover, the second ground of the motion is likewise well taken. Tighe E. Woods, Director of Rent Stabilization, O. R. S., is undoubtedly an indispensable party to this suit. In Smart v. Woods, Housing Expediter, and Janney, Area Rent Director, 6 Cir., 184 F.2d 714, certiorari denied 340 U.S. 936, 71 S.Ct. 496, 95 L.Ed.

675, the opinion of the Court of Appeals for this circuit is deemed directly controlling. See also Berlinsky v. Woods, Federal Housing Expediter, 4 Cir., 178 F.2d 265, certiorari denied 339 U.S. 949, 70 S.Ct. 805, 94 L.Ed. 1363; Jacobs v. Office of Housing Expediter, 7 Cir., 176 F.2d 338; See also orders of this court in Haynes Carter v. George F. Shaw, et al., Civ.Action No. 1825, decided March 23, 1950; and James H. Houghland v. Tighe E. Woods, et al., Civ.Action No. 2203, decided November 29, 1951. Compare Williams, v. Fanning, Postmaster, Etc., 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; and Gnerich, Copartners, Etc. v. Rutter, Etc., 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068.

It follows that the motion of the defendant Area Rent Director to dismiss the complaint must be sustained, and the original preliminary restraining order issued herein on June 30, 1952, and the order of July 17, 1952, continuing the preliminary restraining order in effect, must be dissolved.