**A&B WIPER SUPPLY, INC., et al.**

v.

**CONSUMER PRODUCT SAFETY COMMISSION.**

Civ. A. No. 81–1145.

United States District Court,
E. D. Pennsylvania.

May 19, 1981.

---

Arthur Makadon, Philadelphia, Pa., for plaintiffs.

Vicki Golden, Mana L. Jennings, William J. Moore, Jr., Consumer Product Safety Commission, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiffs seek a declaratory judgment to enjoin the Consumer Product Safety Commission ("the Commission") from proceeding with an enforcement action. Plaintiffs engage in the business of selling material for use as industrial rags. This case arises out of their selling of TRIS treated material in interstate commerce.[1] In February of 1981 the Commission began an enforcement action against plaintiff. The complaint alleges that A&B Wiper Supply, Inc. failed to inform the Commission of the sale as required by section 15(b) of the Consumer Product Safety Act (CPSA), 15 U.S.C. § 2064(b).[2]

Plaintiffs allege that the Commission is without jurisdiction to bring the enforcement action because it failed to promulgate

---

1. TRIS phosphate is a chemical flame retardant. Prior to 1977 it was commonly applied to children's sleepwear. The Commission believes that when used in children's clothing, TRIS can enter the bodies of infants and children by absorption through the skin and by ingestion. This exposure may cause cancer or other substantial illnesses or injuries.

2. Section 15(b) of the CPSA, 15 U.S.C. § 2064(b), states that:

(b) Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product—

(1) fails to comply with an applicable consumer product safety rule; or

(2) contains a defect which could create a substantial product hazard described in subsection (a)(2) of this section, shall immediately inform the Commission of such failure to comply or of such defect, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect or failure to comply.

Subsection 15(a) of the Act, 15 U.S.C. § 2064(a), defines a "substantial product hazard," in relevant part, as

(2) a product defect which (because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk, or otherwise) creates a substantial risk of injury to the public.

a specific rule pursuant to section 30(d) of the CPSA, 15 U.S.C. § 2079(d). Section 30(d) provides in pertinent part as follows:

> (d) A risk of injury which is associated with a consumer product and which could be eliminated or reduced to a sufficient extent by action under the Federal Hazardous Substances Act, . . . may be regulated under this chapter only if the Commission by rule finds that it is in the public interest to regulate such risk of injury under this chapter. Such a rule shall identify the risk of injury proposed to be regulated under this chapter and shall be promulgated in accordance with section 553 of Title 5 [United States Code] . . .

Plaintiffs argue that requiring information under section 2064 amounts to regulation under section 2079, and therefore requires the Commission to promulgate a specific rule. In the absence of such rule, plaintiffs argue, the Commission is without jurisdiction to entertain the enforcement action. Plaintiffs have moved for summary judgment.

The Commission has moved to dismiss, or in the alternative, for summary judgment on two grounds: the first is jurisdictional, and the second is substantive. The Commission argues: (1) the issues are not ripe for judicial determination and the plaintiffs have failed to exhaust administrative remedies, and, (2) the Commission has appropriately followed the provisions of the CPSA and accordingly is empowered to bring an enforcement action against plaintiffs for failure to furnish information as required by 15 U.S.C. § 2064. For reasons discussed below, the Court will grant defendant's motion to dismiss.

The Consumer Product Safety Act and Federal Hazardous Substances Act (FHSA) are overlapping federal schemes for the regulation of dangerous substances in interstate commerce. TRIS, the allegedly hazardous substance involved in this case, has been regulated under the FHSA since mid-1977 when it was first designated a

"banned hazardous substance" by the Commission.[3] Despite the subsequent nullification of the TRIS ban, the Commission has been permitted to proceed against TRIS manufacturers and sellers individually, with the trier of fact determining whether the substance is hazardous within the meaning of the FHSA. *United States v. Articles of Hazardous Substance*, 588 F.2d 39, 42 (4th Cir. 1978).

In the instant case, the Commission chose to proceed under the authority of section 2079(d) of the CPSA. Because the Commission has failed to find it to be in the public interest to regulate TRIS under the CPSA, plaintiffs assert it must proceed, as it has in the past, under the FHSA. The Commission, however, contends that requiring plaintiffs to supply information to the Commission does not constitute "regulation," and that it can, as a matter of discretion, determine that "a risk of injury . . . could [not] be eliminated or reduced to a sufficient extent by action under the FHSA" and impose reporting requirements of 15 U.S.C. § 2064.

We are confronted at the outset with plaintiffs' apparent failure to exhaust their administrative remedies. In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), the Supreme Court noted that there is a "long settled rule of judicial administration that no one is entitled to judicial relief . . . until the prescribed administrative remedy has been exhausted." The primary purpose of the doctrine is "the avoidance of premature interruption of the administrative process." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Judicial intervention into the agency process denies the agency the opportunity to correct its own mistakes and to apply its expertise. *F. T. C. v. Standard Oil Co. of California*, —— U.S. ——, ——, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980), *citing, Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

---

**3.** See *Springs Mills, Inc. v. Consumer Product Safety Commission*, 434 F.Supp. 416 (D.S.C. 1977) for a history of the ban and its subsequent nullification.

Plaintiffs, however, contend that under the facts of the present case the doctrine does not apply. In *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980), the court "recognized two situations in which the exhaustion requirement will not be adhered to: (1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or (2) when there is a clear and unambiguous statutory or constitutional violation." 605 F.2d at 696, *citing, Barnes v. Chatterton*, 515 F.2d 916, 920 (3d Cir. 1975); *American Federation of Government Employees, Local 1904 v. Resor*, 442 F.2d 993, 994–95 (3d Cir. 1971).

### 1. *Irreparable Injury*

Plaintiffs allege that the issuance of the administrative complaint is damaging to their business and that defense of the action will impose a substantial financial burden.

#### a) *Impact on Business*

Plaintiffs contend that the enforcement action already has had a direct and immediate impact on A&B Wiper Company and they have supplied the Court with an affidavit detailing "the material adverse changes in A&B's manner of doing business, the loss of credit from its principal supplier, its direct loss of a Commonwealth subsidy and the apparent loss of substantial customers..." Plaintiffs' Reply Memorandum at 12. *See* Exhibit A, Plaintiffs' Reply Memorandum. While the Court is not unsympathetic to plaintiffs' plight, we believe the harm alleged is insufficient to warrant interference with the Commission's proceedings at this stage. The harm alleged simply does not rise to the level of "irreparable harm" as the term has been defined in the cases. The plaintiffs in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), for example, were faced with serious criminal and civil penalties and were forced to "change all their labels, advertisements, and promotional materials ... destroy stocks of printed matter

and ... invest heavily in new printing type and new supplies." *Id.* at 152–153, 87 S.Ct. at 1517.

In the present case, operation of plaintiffs' business will clearly be made more difficult during the pendency of the enforcement action. We cannot find, however, that plaintiffs' harm is, in any sense, irreparable or that it differs materially from the harm suffered by any defendant facing a substantial civil judgment through administrative or judicial proceedings.

#### b) *Litigation Expense*

Plaintiffs also raise the issue of the enormous expense of defending the enforcement action. Here we are guided by the Supreme Court's admonition in *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." Similarly the Court in *Standard Oil* noted that "we do not doubt that the burden of defending this proceeding will be substantial. But 'the expense and annoyance of litigation is part of the social burden of living under government.'" —— U.S. at ——, 101 S.Ct. at 495, *citing Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938). Accordingly, the Court finds that the harm suffered by plaintiffs' business is insufficient to constitute irreparable harm.

### 2. *Clear and Unambiguous Statutory Violation*

Under the second prong of the test articulated in *First Jersey*, plaintiffs need not exhaust administrative remedies if they can demonstrate a clear and unambiguous statutory violation.

Plaintiffs urge that this case involves a clear statutory violation by the Commission. *Cerro Metal v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980); *Barnes v. Chatterton*, 515 F.2d 916, 920 (3d Cir. 1975). In response the Commission contends that by seeking a penalty for failure to comply with the reporting requirements of section 2064(b) of

the CPSA it is not regulating a risk of injury and that section 2079(d) is therefore not applicable to this proceeding. The Commission also points to proceedings in which it has found that it cannot eliminate or reduce to a sufficient extent risks of injury associated with products under the FHSA unless it is notified in accordance with section 2064(b).[4] *See* 43 Fed.Reg. 34988 (1978); 39 Fed.Reg. 6061, 6062 (1974); 16 CFR 1115.2(d). While the language of section 2079(d) and the section's accompanying legislative history are not unambiguous with respect to this issue, the Court believes both tend to support the government's argument.

The Court would emphasize it is not deciding the jurisdictional issue on the merits. We conclude only that the Commission has a measure of discretionary authority to determine whether or not a risk of injury can be eliminated or reduced to a sufficient extent under the FHSA,[5] and that it may well be empowered to impose reporting requirements in certain instances. The determination of the adequacy of certain remedies for the regulation of risk of injury would seem to be one best made by an administrative agency, rather than by this Court. We hold, however, only that plaintiffs have failed to establish a clear and unambiguous statutory violation, and accordingly believe the Commission should be given the opportunity to consider the jurisdictional issue. Plaintiffs may ultimately seek review of the Commission's statutory authority to bring the enforcement action pursuant to 5 U.S.C. §§ 704 and 706(2). This Court is simply unwilling to interrupt an ongoing administrative proceeding at this time.

---

4. Contrary to the argument of plaintiffs' counsel the net effect of this approach is not to discard § 2079(d). 16 CFR § 1115.2(d) merely requires those dealing in consumer products subject to regulation under the FHSA to comply with the reporting requirements of the CPSA, not the entire Act.

5. Plaintiffs' counsel, in fact, conceded that the Commission does retain a measure of discretion in certain instances. Counsel contends however, that the Commission is without such discretion when it already knows of the risk.