LAKEHEAD PIPE LINE COMPANY, INC., as sponsor and named fiduciary of Lakehead Pipe Line Company, Inc. Employees' Savings Plan, and Lakehead Pipe Line Company, Inc. Employees' Savings Plan, Plaintiffs,

v.

INVESTMENT ADVISORS, INC., a Texas corporation, Thomas A. Wimberly, an individual, Nicholas N. Wentworth, an individual, Elinor G. Ashworth, an individual, and Does 1–30, inclusive, Defendants.

Civ. No. 5–95–24.

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 1, 1995.

Penny M. Tibke, Minneapolis, MN, for Plaintiffs.

Robert E. Woods, Minneapolis, MN, for Defendants.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to

a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendants' Motion to Stay Proceedings Pending Appeal.[1]

With the consent of the parties, we have considered the Motion on the parties' written submissions. For these purposes, the Plaintiffs have appeared by Penny M. Tibke, Esq., and the Defendants have appeared by Robert E. Woods, Esq.

For reasons which follow, we deny the Motion for a Stay.

## II. *Factual and Procedural Background*

On February 5, 1995, the Plaintiffs commenced this action and challenged certain investment decisions that the Defendants had made which, according to the Plaintiffs, resulted in substantial financial losses to the Lakehead Pipe Line Company's Employees' Savings Plan. Arguing that any controversy between these parties was governed by an arbitration clause, the Defendants moved the District Court, the Honorable James M. Rosenbaum presiding, for an Order compelling arbitration and staying these proceedings until the arbitration should be completed. A Hearing on that Motion was conducted on May 19, 1995, and, on that same date, the District Court denied the Defendants' Motion. Now, the Defendants seek a Stay of these proceedings pending the completion of their appeal from the District Court's decision.

## III. *Discussion*

All parties agree that the appropriate regimen for our analysis of the Defendants' Motion is provided by *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1980), which requires an examination of the following factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

See also, *In re Workers' Compensation Refund,* 851 F.Supp. 1399, 1401 (D.Minn.1994).

Understandably, our analysis turns to an examination of each of these factors.

A. *Likelihood of Success on the Merits.* Recognizing that even the most self-effacing of Courts would be reluctant to concede that a challenge to its ruling had a likelihood of success, the Courts have ameliorated the obduracy of this first criterion. As the Court recognized in *In re Workers' Compensation Refund,* supra at 1401:

> A district court, however, may properly stay its order pending appeal where such order involves the determination of "substantial and novel legal questions." *Sweeney v. Bond,* 519 F.Supp. 124, 133 (E.D.Mo.1981), aff'd, 669 F.2d 542 (8th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). See also *Walker v. Lockhart,* 678 F.2d 68, 71 (quoting *Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d 109, 113 (8th Cir. 1981)) (where a movant "has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less").

On occasion, therefore, a Court may find that this factor is "narrowly satisfied" when the "question presented * * * is not wholly without doubt." *Id.*

---

**1.** We have, on two prior occasions, addressed the propriety of a Stay in these proceedings. By Order dated May 1, 1995, the Court acceded to the wishes of the parties and stayed discovery until the District Court should rule on the pending Motion to Compel Arbitration. By the terms of that Order, we made clear that the parties were "at liberty to request this Court to convene a further Scheduling Conference as circumstances should so warrant."

Consistent with the directives of our Order of May 1, the parties informally advised the Court of the District Court's ruling on the Motion to Compel and, informally, the Defendants sought an "interim stay" on the pretrial processing of this case until an appeal from the District Court's Order could be taken. By Order dated June 7, 1995, we denied the request as we could foresee "no danger of materially altering the status of the parties by requiring the Defendants to respond to the Plaintiffs' preliminary discovery requests." We are advised that the Defendants' responses to those discovery requests have been served.

Here, in denying the Defendants' Motion to compel arbitration, the District Court prefaced its ruling with the observation that the issue presented posed "a difficult question." If our experience is a guide, however, the difficulty of the question posed does not readily translate into a fair appraisal as to the certainty of the result reached. Rather, we view the Court's observation as a recognition of the fact-dependent nature of the issue presented. As the Court acknowledged, if the conduct of the parties were to be governed by the terms of two, successive agreements—those of January 2 and July 30, 1992, each of which contained a mandatory arbitration clause—then the Defendants' Motion to compel arbitration would be well-taken and, "absent more, [the] Court would have an easy case."

■ Making the case somewhat more problematic was the presence of a third, successive written agreement, which was drafted by the Defendants, which did not contemplate an arbitration of the parties' disputes, and which contained an integration clause which stated, in relevant part, as follows:

> This agreement constitutes the entire agreement of the parties with respect to the management of the Account and can be amended only by written document signed by the parties.

Had the Defendants intended to incorporate the earlier written agreements, which governed the same investment accounts, then they were free to draft such language—an election that they chose not to follow. More importantly, had the parties been interested in mandating arbitration as the sole means of resolving their disputes, the means were available to them in the language that was contained in the earlier, superseded agreements.

■ Although the Defendants suggest that the parties' intent to arbitrate their disputes can be inferred from the "strong federal policy favoring arbitration as a method of dispute resolution," we are not persuaded that such a policy, which admittedly exists, can fill the lofty interstices left by the parties' failure to agree on arbitration as their dispute resolution technique.[2] See generally, *Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, —— – ——, 115 S.Ct. 1212, 1215–16, 131 L.Ed.2d 76 (1995); *Allied–Bruce Terminix Companies, Inc. v. Dobson,* —— U.S. ——, —— – ——, 115 S.Ct. 834, 838–39, 130 L.Ed.2d 753 (1995). Quite simply, "the [Federal Arbitration Act's] pro-arbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* supra —— U.S. at ——, 115 S.Ct. at 1216. "[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e] evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

The District Court implicitly determined that the Defendants had failed to present such clear and unmistakable evidence, and we find no showing to the contrary. As the Supreme Court recently observed, "the basic objective in [Federal arbitral law] is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, * * * but to ensure that commercial arbitration agreements, like other contracts, 'are enforced according to their terms,' * * * and according to the intentions of the parties * * *." *Id.* at ——, 115 S.Ct. at 1925. Since we find the District Court's determination to be concordant with these precepts of contract

2. In part, the Defendants argue that the statutory mechanism, which permits a party to appeal from the denial of a Motion to compel arbitration when no such appeal is allowed from the grant of the Motion, reveals Congress' intent that "a party who believes that arbitration is required by an agreement between the parties need not suffer the expense and inconvenience of litigation before receiving appellate review of a district court judgment that arbitration is inappropriate." We would merely observe that, quite recently, the Supreme Court rejected the same inferential argument, under somewhat paralleling circumstances. See, *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). Whatever may be said for the timing of a review of the District Court's Order, we find little prospect that Congress intended the facility of such an appeal to reflect some design that an unwilling party might be coerced into an arbitration to which that party had not specifically agreed. *Id.* at —— – ——, 115 S.Ct. at 1924–25.

law, we find this factor to weigh against the granting of the requested Stay.

 B. *The Prospect of Irreparable Injury Absent a Stay.* The Defendants contend that, absent a Stay, they will be exposed to certain litigation costs which might well be irrecoverable. While this prospect cannot be categorically denied, we think that the fear that the Defendants voice is outweighed by reality. Undoubtedly, the Plaintiffs will wish to depose certain of the Defendants and, with equal certainty, that discovery process will entail some expense. In our view, however, the expense can be effectively monitored by the Court and, should the Plaintiffs seek to abuse the discovery allowed to them by the Federal Rules, we are not powerless to act, as no one's interests are served by needless or wasteful discovery.

We find no cause for further delay in the preparation of this case for Trial and we seriously doubt that the incurrence of litigation expenses, without more, constitutes the type of irreparable harm envisioned by the Court in *Hilton v. Braunskill,* supra. See, e.g., *F.T.C. v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980); *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Petroleum Exploration, Inc. v. Public Service Commission,* 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294 (1938); *West v. Bergland,* 611 F.2d 710, 718 (8th Cir.1979); *Clayton Brokerage Co. v. Commodity Futures,* 548 F.Supp. 1015, 1018 (E.D.Mo.1982). We do not suggest that this case should proceed through a Trial while the Defendants' appeal is pending, but we need not address that issue as the appellate process will surely be completed prior to the scheduling of this case for Trial. If not, the Defendants are free to renew their Motion to Stay. At this juncture, we do not regard this factor as persuasively prompting the need for a Stay.

 C. *Injury to the Party Opposing the Stay.* The Plaintiffs underscore that further delay in the preparation of this case for Trial may well impair their ability to enforce a Judgment, if they ultimately prevail on the merits. While we have no means of assessing the financial wherewithal of the Defendants, we are satisfied that the Plaintiffs' claims should not pointlessly lie comatose as the competing claims of other litigants progress to Trial or to settlement.[3] Of course, the Plaintiffs could accede to the Defendants' preference for arbitration—as the price for an efficacious resolution of their claim—but, given their rejection of the arbitration process, the exploration of the claims and defenses in this action should be allowed in order to narrow the issues in contention or, perhaps, to provide a sufficient factual basis upon which to foster an amicable resolution of the dispute. Accordingly, we are unable to say that, barring the denial of the Stay, the Plaintiffs will not be substantially injured.

D. *The Public Interest.* As we have previously noted, there is no national policy, nor a legitimate public interest, in requiring unwilling parties to undergo arbitration, at least in the absence of a contractual agreement to do so. *First Options of Chicago, Inc. v. Kaplan,* supra — U.S. at —, 115 S.Ct. at 1925. Therefore, we find that the public interest factor counsels against a Stay.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendants' Motion for a Stay Pending Appeal [Docket No. 26] is DENIED.

2. That, pursuant to Rules 16(b) and 26(f), Federal Rules of Civil Procedure, the parties shall, within 15 days from the date of this Order, meet and confer in order to develop a proposed discovery plan, to include deadlines for the completion of discovery and for the submission of dispositive and non-dispositive Motions, for the Court's review and approval.

---

**3.** Indeed, were we persuaded that the Stay should issue, we would be inclined to impose a substantial bond as security for any Judgment that the Plaintiffs might be awarded on their claims. See, *In re Workers' Compensation Refund,* 851 F.Supp. 1399, 1403 (D.Minn.1994).