519 F.Supp. 849 (1981)
FOX & COMPANY, et al., Plaintiffs,
v.
Vincent SCHOEMEHL, etc., Defendants.
No. 81-909C(2).
United States District Court, E. D. Missouri, E. D.
August 7, 1981.
Carroll J. Donohue, St. Louis, Mo., for plaintiffs.
*850 Judith A. Ronzio, Mark T. Keaney, Richard D. Walters, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This case is now before this Court on defendants' motions to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Plaintiffs brought this action pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiffs allege that defendants Vincent Schoemehl and John Temporiti violated plaintiffs' first and fourteenth amendment rights by refusing to allow plaintiffs to continue as auditors of the Board of Education of the City of St. Louis. Mayor Schoemehl, subsequently, hired defendant Peat, Marwick, Mitchell & Co. to replace plaintiffs and to continue the audit of the Board of Education. Defendants argue in response that plaintiffs' complaint failed to present this Court with a federal claim and therefore this action should be dismissed. They allege that plaintiffs are not public employees and therefore their discharge did not violate the constitutional rights of plaintiffs.
Plaintiffs' complaint alleges three counts against defendants. In Count I plaintiffs seek injunctive relief, punitive damages, and attorneys' fees for the alleged violation of their constitutional rights by defendants Schoemehl and Temporiti. Plaintiffs also seek a court order which would direct defendants Robert E. Wentz and the Board of Education of the City of St. Louis to allow plaintiffs to continue and complete their audit. In Counts II and III plaintiffs seek relief against defendants Schoemehl, Temporiti, and Peat, Marwick, Mitchell & Co. for their alleged tortious interference with the contractual relationship between plaintiffs and the City of St. Louis. Plaintiffs suggest that this Court has jurisdiction over the state claims found in the latter two counts because they are pendent to the federal claim asserted in Count I of the complaint. Therefore, if this Court decides as a matter of law that Count I fails to state a federal cause of action upon which relief may be granted, Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the remainder of the complaint must be dismissed because there is no independent federal subject matter jurisdiction.
Plaintiff Fox & Company is a partnership engaged in the business of certified public accounting. Pursuant to R.S.Mo. § 165.181, Mayor Conway appointed plaintiffs to audit the books of the Board of Education of the City of St. Louis for the fiscal year ending June 30, 1981. Plaintiffs accepted the appointment on March 17, 1981 and began to perform many different services in reliance upon the contract. Plaintiffs planned and hired personnel for their audit; observed and counted the textbook inventory and food service supplies; and they considered possible procedures for the administration of free and low price lunch programs. Nonetheless, on June 30, 1981 defendant Schoemehl, after being elected Mayor of St. Louis, sent a directive to plaintiffs ordering the discontinuance of their services. Mayor Schoemehl then proceeded to replace plaintiffs by appointing defendant Peat, Marwick, Mitchell & Co. to the position of auditor. This partnership has contributed approximately $2,350.00 to Mayor Schoemehl's campaign fund, in addition to preparing a study concerning the feasibility of reopening Homer G. Phillips Hospital. Taking plaintiffs' allegations to be true for purposes of ruling on these motions to dismiss, it will be assumed that Mayor Schoemehl's decision to hire defendant Peat, Marwick, Mitchell & Co. was politically motivated.
The Supreme Court in two separate instances recently expressed concerns over the practice of firing government employees when the only motivating factors are the political beliefs held by these employees and their allegiance to particular parties. In Elrod v. Burns, the Court held that the discharge of non-policy making non-confidential governmental employees violated the First and Fourteenth Amendments of the Constitution. 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The parties that brought suit in Elrod were Republican non-civil service employees of the Cook *851 County Sheriff's Office. Before the incoming Democratic sheriff fired them, they held the positions of bailiff, security guard, chief deputy and process server. The Supreme Court condemned these dismissals reasoning that they limited the exercise of protected beliefs and the right to association embodied in the First Amendment of the Constitution.
The Supreme Court reaffirmed its stance on patronage discharges and arguably broadened the standard of protection recently in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In Branti, the Supreme Court changed the standard for determining what public employees should be protected against patronage discharges by holding that "the ultimate inquiry is not whether the label `policymaker' or `confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295. On the basis of this standard, the Court disapproved the discharge of nine assistant public defenders reasoning that political affiliation was not an acceptable requirement for this type of governmental employment.
Although Branti and Elrod clearly restrict the ability of incoming government officials to replace non-civil service employees with other employees who hold similar beliefs or who are members of their own political affiliation, the Court has been careful to limit its holding in two ways: First, the Court emphasized that it was concerned solely with the constitutionality of the practice of dismissing public employees for partisan reasons. 445 U.S. at 513 n.7, 100 S.Ct. at 1292 n.7, 427 U.S. at 353, 96 S.Ct. at 2679-80. The Court went on to recognize that there are many other practices included within the definition of a patronage system. These practices include granting non-officeholders lucrative government contracts, placing supporters in government jobs specifically created for the purpose of making political appointments, and giving favored wards improved public services. By listing these patronage practices and explicitly refusing to comment on their validity it is clear that the Court intended to limit its holding to the validity of the dismissal of public employees for partisan reasons.
The second way in which the Court limited its holdings in Branti and Elrod was by recognizing that First Amendment protections are not absolute. In Branti, the Court recognized that there are certain benefits to the patronage system and that there will be instances when party affiliation may be a legitimate requirement for government employment. 445 U.S. at 517, 100 S.Ct. at 1294. This standard has been used to uphold discharges of a corporate counsel, Bavoso v. Harding, 507 F.Supp. 313 (S.D.N.Y. 1980) and an inspector of elections, Mirabella v. Board of Elections of City of New York, 507 F.Supp. 338 (S.D.N.Y.1980) solely for partisan reasons.
Having recognized the limitations placed by the Supreme Court on its holdings in Elrod and Branti, it is necessary to determine whether Mayor Schoemehl's actions violated the constitutional rights of the plaintiffs. The parties to this action concede that plaintiffs are not "public employees." According to the factors used to determine whether an agent is an employee or an independent contractor it is clear that plaintiffs fit into the latter category. The City of St. Louis had little or no control over the performance of plaintiffs as auditors. Plaintiffs provided their own work place, supplies and employees. The City employed the plaintiffs to conduct one audit and the job required a high level of expertise. In light of the standards enunciated in Sweeney v. Bond, 519 F.Supp. 124, it is clear that plaintiffs are independent contractors and may only be afforded those constitutional protections which are in accordance with their status. No. 81-0261 (E.D.Mo. 5/19/81). In Sweeney, the court held that fee agents, authorized under Mo. Rev.Stat. § 136.055 to issue licenses, collect taxes, and fees were not "public employees" as defined by the Supreme Court in Elrod and Branti. The court reasoned that the *852 failure of the agents to receive state benefits or salaries, and the management of daily operations by fee agents determined their status as independent contractors. The court then concluded that their discharges resulting from their political affiliations did not violate the Constitution or the standards articulated in Branti or Elrod. The court recognized that the Supreme Court expressly limited these holdings to partisan dismissals of state employees and therefore refused to extend this protection to public contractors.
It is not within the province of this Court to extend or broaden the standards enunciated by the Supreme Court in Elrod and Branti. This Court must hold that defendants did not violate the first amendment right of plaintiffs, independent contractors, when Mayor Schoemehl cancelled plaintiffs' auditing contract with the City, for several reasons: First, the Supreme Court has expressly restricted the scope of its opinion to partisan dismissals of public employees. Branti, 445 U.S. at 513 n.7, 100 S.Ct. at 1292 n.7, Elrod, 427 U.S. at 353, 96 S.Ct. at 2679-80. It is clear that plaintiffs Fox & Company are not employees and that the auditing contract presents a question of partisan hiring rather than partisan firing. Mayor Schoemehl hired defendant Peat, Marwick, Mitchell & Co. presumably because of contributions the company made to his campaign; he did not fire plaintiffs because of expression of political beliefs or due to a particular partisan affiliation. Second, the Supreme Court expressly has recognized the existence of several patronage practices and has explicitly refused to condemn those practices in its holdings. One such practice is the awarding of lucrative governmental contracts to political supporters. Branti, 445 U.S. at 513 n.7, 100 S.Ct. at 1292 n.7, Elrod, 427 U.S. at 353, 96 S.Ct. at 2679-80. In this instance Mayor Schoemehl awarded the contract to audit the financial affairs of the Board of Education of the City of St. Louis to one of his political supporters. This Court can not view this practice as a violation of plaintiffs' first amendment rights if the Supreme Court explicitly failed to do so. A third reason for failing to find that the actions of defendants violated the constitutional rights of plaintiffs is the recognition of this Court and the Supreme Court that there will be instances when restraints upon first amendment rights must be upheld. The distinctions between the status of an independent contractor and a public employee are great enough to allow for the application of different constitutional standards. In Elrod, the Supreme Court was concerned about partisan dismissal of public employees for several reasons. The Court based its opinion on the pervasiveness of public employment in a time of unemployment, and the severe limitations the threat of dismissal could have on the constitutional rights of public employees. However, a government employer can not subject an independent contractor to the same restraints or maintain the same degrees of control that it might over a full time public employee. Plaintiffs have lost the ability to perform one auditing contract. In this instance plaintiffs will be able to continue to exercise their accounting profession in an independent manner despite the actions of defendants and the cancellation of the auditing contract with the St. Louis Board of Education.
The final reason that this Court must find that the discharge of plaintiffs did not violate the First or Fourteenth Amendments of the Constitution is that a holding to the contrary would fail to recognize the traditional benefits accorded to this country by the patronage system. Justice Powell, in his dissenting opinions in Elrod and Branti, emphasizes the importance of stable political parties and points out how the patronage system has helped to encourage the growth of parties and avoid political fragmentation: "Patronage appointments help build stable political parties by offering rewards to persons who assume the tasks necessary to the continued functioning of political organization.... The use of patronage to fill such positions builds party loyalty and avoids `splintered parties and unrestrained factionalism [that might] do significant damage to the fabric of *853 government.' Storer v. Brown, 415 U.S. 724, 736 [94 S.Ct. 1274, 1282, 39 L.Ed.2d 714] (1974)." Branti, 445 U.S. at 527, 100 S.Ct. at 1299. Powell goes on to assert that the restriction of the ability of incoming government officials to appoint employees on the basis of political affiliation will lessen political accountability and may very well impair the right of voters to structure their government. Branti, 445 U.S. at 532, 100 S.Ct. at 1302. Finally, Powell addresses the question that is left unanswered by the Branti opinion. Due to the vague standard enunciated by the Court in Branti, it will be the courts who will determine in the end when party affiliation is an appropriate factor to consider in the course of employment decisions. "Federal judges will now be the final arbiters as to who federal, state, and local governments may employ. In my view, the Court is not justified in removing decisions so essential to responsible and efficient government from the discretion of legislative and executive officials." Branti, 445 U.S. at 525, 100 S.Ct. at 1298. For these reasons, this Court can not extend the constitutional protections against partisan dismissals afforded to public employees to plaintiffs, concededly independent contractors.
Accordingly, defendants' motions to dismiss Count I will be granted. Defendants' motions to dismiss Counts II and III will also be granted because they are pendent to Count I and they have no independent federal subject matter jurisdiction.
In conclusion, this Court would like to make clear that the granting of defendants' motions to dismiss is based only upon the legal conclusion that plaintiffs' complaint fails to state a cause of action upon which relief may be granted. It is therefore unnecessary to reach the additional issues presented by defendant Peat, Marwick, Mitchell & Co. and the Board of the City of St. Louis in their motions. This Court will not decide whether or not a plaintiff can join a defendant on the basis of a state claim over which there is only pendent jurisdiction. Nor will this Court determine whether plaintiffs failed to allege correctly, in their complaint, the capacity of defendant Peat, Marwick, Mitchell & Co. to be sued.[1] And it is also unnecessary to determine whether plaintiffs alleged any cause of action against the Board of Education in their complaint. Finally, this Court would like to emphasize, that its dismissal of this complaint for failure to state a cause of action upon which relief may be granted, is not a comment upon the possible validity of any contractual claims that might lie under state law. This Court is only finding that federal court is not an appropriate forum for the resolution of this dispute. Accordingly this action is dismissed.
NOTES
[1] The parties informed this Court that they agreed if this were a sole basis for dismissal that this Court should allow plaintiffs to amend their complaint. As stated, the failure to state a claim upon which relief can be granted is the basis for dismissal.