David B. COURTWAY, et al., Appellants,

v.

Mel CARNAHAN, et al., Respondents.

No. WD 54402.

Missouri Court of Appeals,
Western District.

June 23, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court July 28, 1998.

Application for Transfer Sustained
Sept. 22, 1998.

Case Retransferred Jan. 19, 1999.

Court of Appeals Opinion Readopted
Jan. 25, 1999.

Leo V. Garvin, Jr., St. Louis, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for Respondents.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

The appellants, fifty-eight named former Missouri Department of Revenue fee office agents who were appointed pursuant to § 136.050 [1], appeal the circuit court's judgment denying their petition for declaratory judgment and injunctive relief on their claim of unlawful termination of their fee agent contracts. In their sole point on appeal, the appellants claim that the circuit court erred in denying their petition because the termination of their fee agent contracts violated

1. All statutory references are to RSMo 1994, unless otherwise indicated.

their rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 8 and 9 of the Constitution of the State of Missouri, which guarantee freedom of speech and association, in that there was not substantial evidence to support a finding by the circuit court that "political affiliation [was] an appropriate requirement for the effective performance of the duties of Department of Revenue fee office agents."

We affirm.

## Facts

Shortly after The Honorable Mel Carnahan, a Democrat, was elected Governor of Missouri in late 1992, but before he took office, the appellants, all Republicans, filed a four-count petition in the Circuit Court of Cole County, Missouri, wherein they sought, *inter alia,* a declaration that the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 8 and 9 of the Constitution of the State of Missouri protected them from the termination of, or interference with, their fee office agent contracts with the Missouri Department of Revenue (DOR) on the basis of their political affiliation. The petition also sought a preliminary and permanent injunction enjoining the named defendants, the Honorable John Ashcroft, the then Governor of Missouri; Raymond Wagner, the then Director of Revenue; and their successors in office from terminating or interfering with their positions as fee agents on the basis of their political affiliation. After Governor Carnahan was sworn-in as governor, he was substituted as a named defendant for Mr. Ashcroft. Likewise, in 1993, after Janette M. Lohman was appointed the Director of Revenue (the Director) by Governor Carnahan, she was substituted as a named defendant for Mr. Wagner.

The appellants' request for a preliminary injunction was denied. Shortly thereafter, appellants were terminated. They were replaced by new agents appointed by the Director at the direction of Governor Carnahan.

The case at bar proceeded to trial on January 14 and February 10, 1997, before the Honorable Thomas J. Brown, III. At trial, the appellants offered into evidence excerpts from the deposition of DOR officer Richard Lamb, answers to interrogatories prepared by the Director, and the testimony of two of the appellants. The respondents offered into evidence additional excerpts from the deposition of Mr. Lamb and excerpts from the deposition of Roy Temple, the former Chief of Staff for Governor Carnahan.

The evidence was that fee agents, appointed pursuant to § 136.055, are not required to personally operate their offices, but may hire their own employees and delegate office operations to them. They select their own office locations and pay their own operating expenses without any reimbursement from the State. They are not compensated by tax dollars, but by collecting statutorily authorized fees. They are not subject to the civil service code, and thus, are not required to cease their political activities once they are appointed. Historically, they have been viewed, by some, as ambassadors and agents of the Governor.

On March 3, 1997, the trial court entered its findings of fact and conclusions of law granting judgment to the respondents declaring that the appellants could be terminated on the basis of their political affiliation without violating their constitutional rights, finding that "political affiliation [was] an appropriate requirement for the effective performance of the duties of Department of Revenue fee office agents." The appellants appealed the judgment to the Supreme Court of Missouri on the basis that the case involved constitutional issues. On May 27, 1997, the Supreme Court of Missouri transferred the case to this court pursuant to Article V, Section 11 of the Constitution of the State of Missouri, because the issue presented on appeal involved neither the validity of a statutory or constitutional provision or the title to any state office.

## Standard of Review

■ In a declaratory judgment action wherein an injunction is also sought, the judgment entered by the trial court will be affirmed unless: (1) there is no substantial evidence to support it; (2) it is against the

weight of the evidence; or, (3) it erroneously declares or applies the law. *Hills v. Greenfield Village Homes Ass'n, Inc.*, 956 S.W.2d 344, 348 (Mo.App.1997).

## I.

In their sole point, the appellants claim that the circuit court erred in denying their petition because the termination of their fee agent contracts violated their rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 8 and 9 of the Constitution of the State of Missouri, which guarantee freedom of speech and association, in that there was not substantial evidence to support a finding by the circuit court that "political affiliation [was] an appropriate requirement for the effective performance of the duties of Department of Revenue fee office agents." We disagree.

The United States Supreme Court has classified governmental terminations of public employees into two general factual scenarios: (1) if the employee is terminated solely on account of his political affiliation, it is classified as a "patronage dismissal" case; and, (2) if the employee's termination is based at least in part on an element of speech, it is classified as a *"Pickering"* [2] case. These classifications are significant in that they provide the appropriate legal tests to be used in determining whether the terminations in question here violated the asserted constitutional rights of the appellants. The parties agree, as do we, that the case at bar is a "patronage dismissal" case. As such, we will review the appellants' terminations as "patronage dismissals" to determine if the record supports the decision of the trial court in upholding them as lawful.

Generally, patronage dismissals of public employees are held to be violative of the rights granted to them by the First and Fourteenth Amendments of the United States Constitution. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Sweeney*

*v. Bond*, 519 F.Supp. 124 (1981). However, in this respect, these constitutional rights are not absolute, and may be curtailed for interests of vital importance, the burden of proving the existence of which rests upon the government. *Elrod*, 427 U.S. at 348, 96 S.Ct. 2673.

> [If a patronage dismissal] is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights.

*Id.* at 363, 96 S.Ct. 2673. The constitutional protection afforded to public employees by *Elrod* and *Branti* was extended to independent contractors, such as the appellants, in *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), provided the first test for determining whether a patronage dismissal furthered a vital governmental interest by a means least restrictive of freedom of belief and association. In *Elrod*, the United States Supreme Court held that the only employees excepted from the constitutional protection from termination from their positions for partisan political reasons were those employees sharing a confidential relationship with their superiors and those in "policy-making" positions. *Id.* at 367, 96 S.Ct. 2673. However, in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the court redefined the patronage dismissal test provided for in *Elrod*, holding that the proper inquiry is "whether the hiring authority can demonstrate that party affiliation is an *appropriate requirement* for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. 1287 (emphasis added). Here, the record clearly reflects that the trial court applied the *Branti* test in determining that the appellants' terminations did not violate their constitutional rights. Thus, the issue we must decide is whether the record supports a

---

**2.** *Pickering v. Board of Ed. of Township High School Dist. 205, Will County, Illinois*, 391 U.S.

563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

finding by the trial court that political affiliation was an appropriate requirement for the effective performance of the position of a fee agent.

■ The appellants' claim, that political affiliation was not an appropriate requirement for the effective performance of their positions, is based upon their contention that political affiliation has no relevance to the statutory duties for fee agents, as set forth in § 136.055, which states, in pertinent part, as follows:

1. Any person who is selected or appointed by the state director of revenue to act as an agent of the department of revenue, *whose duties shall be the sale of motor vehicle licenses and the collection of motor vehicle sales and use taxes under the provisions of section 144.440, RSMo,* and who receives no salary from the department of revenue, shall be authorized to collect from the party requiring such services additional fees as compensation in full and for all services rendered on the following basis. . . .

(Emphasis added.) We would agree that if the duties of a fee agent were strictly limited to those stated in § 136.055, political affiliation would not be an appropriate requirement for the effective performance of the position. However, we disagree with the appellants that we are limited to the statutory duties in § 136.055 to determine whether political affiliation was an appropriate requirement for the effective performance of the position of a fee agent.

In support of their argument that the duties of a fee agent should be limited to those set forth in § 136.055 in determining whether political affiliation is an appropriate requirement for the effective performance of the position, the appellants cite *State ex rel. Mitchell v. City of Sikeston,* 555 S.W.2d 281 (Mo.banc 1977). The appellants' reliance on *Mitchell* is misplaced. It simply restated the well settled rule that municipalities are limited to exercising those powers expressly or impliedly granted to them by statute. We find no authority for the proposition that in determining whether political affiliation was an appropriate requirement for the effective performance of the position of a fee agent,

we are limited to an examination of the statutory duties set forth in § 136.055. In this respect, § 136.055 does not limit the duties of a fee agent to those expressly stated therein. In addition, there are no statutes which prohibit fee agents from performing other duties not expressly contained in § 136.055. In fact, the record reflects that the position of fee agent has historically encompassed many duties not expressly contained within § 136.055. These additional duties were recognized and discussed in *Sweeney v. Bond,* 519 F.Supp. 124 (1981).

In *Sweeney,* the U.S. District Court for the Eastern District of Missouri was called upon to determine whether a fee agent could be terminated on the basis of political affiliation, after fee agents appointed by former Governor Joseph Teasdale, a Democrat, were terminated in 1981, by former Governor Kit Bond, a Republican. *Sweeney* was decided before *O'Hare.* As a result, because the court found that the fee agents were independent contractors, rather than employees, the court found they were not entitled to constitutional protection from termination on the basis of political affiliation. Nevertheless, the court proceeded to examine the issue of whether the fee agents' terminations violated their constitutional rights under the *Branti* test if they had been determined to be public employees. The court stated that even if fee agents were deemed to be public employees, requiring analysis under the *Branti* test, they would not be afforded constitutional protection from their terminations because it found that political affiliation was an appropriate requirement for the effective performance of the duties of fee agents.

In determining that political affiliation was an appropriate requirement for the effective performance of the position of fee agent, the *Sweeney* court noted that

fee agents have more than five million contacts with the public during their term and do serve as selected emissaries of the incumbent administration and thus reflect its concern for courtesy, efficiency, and integrity. Unlike civil servants who remain during all administrations, the fee agents are symbols of the governor's office who do not bring the usual disadvantages

of patronage employees to their posts. The unique structure of the fee agent position minimizes the usual deficiencies of patronage.

First of all, there is little or no additional cost to the government, for the fees of the agents are simply added to the costs of the licenses and taxes, thus allowing the state the full and complete measure of its taxing bounty.

Second, any citizen wanting to avoid the agent's small fee can seek out a branch office or utilize the mails to pay the license fees and taxes without paying the $1.00 fee. He may have to forego the convenience of location or scheduled availability, but that would be a luxury that he could judge the value of and accept or decline.

Third, the requirements for filling the position of fee agent are simple and generic, no special skill or professional knowledge is needed, and thus large numbers or individuals could easily qualify for the posts with little difficulty in completing the work required.

Fourth, while not requiring the confidentiality and policymaking function of the top-level positions in state government, there is the responsibility of demonstrating loyalty, efficiency, and partisan pride, which could be interpreted as a hallmark of the incumbent administration.

Fifth, the fee holder can delegate practically all of the chores and responsibility of the office to others that he employs, and thus continue to actively and fully participate in the political activities of his choice without the restriction of the civil service code or the loss of services to the state.

Sixth, the novel status of motor vehicle license fee agents supports the argument that the state interest in having such an unusual arrangement is an intentional and planned circumstance, designed to meet and overcome the shortcomings of most patronage assignments.

In summary, then, the fee agents are extraordinarily suited for partisan, political appointment, and may well be a near per-fect example of the kind of role suggested in *Branti*.

*Sweeney,* 519 F.Supp. at 129–30.

The record here supports the fact that the position of a fee agent is substantially, if not completely, the same today as it was at the time *Sweeney* addressed the issue of whether political affiliation was an appropriate requirement for the effective performance of the position. As such, we find the reasoning of *Sweeney* to be as equally applicable today as it was when it was decided. We find no compelling reason to reach a different result here other than that contemplated by the *Sweeney* analysis. Particularly compelling for us in reaching this decision is the fact, as discussed in *Sweeney,* that, unlike instances where tax dollars are expended, in the case of fee agents, very little, if any, tax dollars are used to support them. This fact distinguishes the fee agents' termination on the basis of political affiliation from the termination of an employee under a political patronage or spoils system supported by public funds, which is generally viewed as repugnant by the general public.

Because we find the reasoning of *Sweeney,* on the issue presented, to be persuasive, we hold that the trial court did not err in declaring that the appellants' termination based on their political affiliation was an appropriate requirement for the effective performance of individuals in the position of a fee agent appointed pursuant to § 136.055.

Point denied.

### Conclusion

The judgment of the circuit court declaring that the appellants' constitutional rights were not violated by their termination as fee agents based on their political affiliation is affirmed.

All concur.